IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDVIK AB, | : Case No.: 4:05cv575 |
| | : |
| Plaintiff | : Judge Jones |
| | : |
| v | : |
| | : |
| ROCKMORE INTERNATIONAL, INC., | : |
| | : |
| Defendant | : |

**MEMORANDUM AND ORDER**

November 28, 2005

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion to Transfer Venue ("the Motion") (doc. 13) filed by Defendant Rockmore International, Inc. ("Defendant" or "Rockmore") on June 1, 2005. For the reasons that follow, the Motion will be granted.

## FACTUAL BACKGROUND/PROCEDURAL HISTORY:

Plaintiff Sandvik AB ("Plaintiff" or "Sandvik") filed a complaint in the United States District Court for the Middle District of Pennsylvania on March 22, 2005 for patent infringement. (Rec. Doc. 1). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1338(a). In the complaint, Plaintiff has accused Defendant of infringing two United States patents covering a unique type of earth and rock

1

boring device known as a down-the-hold ("DTH") hammer drill and bit. Specifically, Plaintiff asserts that it is the owner of U.S. Patent Nos. 5,305,841 ("the 841 Patent") and 5,931,243 ("the 243 Patent"), both entitled "Hammer Device," which issued on August 26, 1994, and August 3, 1999, respectively. (Compl. ¶ 5). Plaintiff alleges that Rockmore has been and continues to contribute to the infringement of, and/or induce the infringement of the 841 and 243 Patents pursuant to 35 U.S.C. § 271 by making, selling, using, offering to sell, and/or importing into the United States products embodying the patented inventions. Id. ¶ 6. In addition, Plaintiff asserts in the complaint that Rockmore's infringement of the 841 and 243 Patents is knowing and willing and that Sandvik has been, and will continue to be, damaged as a result of such infringement. Id. ¶¶ 7-8.

On June 1, 2005, Defendant filed the instant Motion, which has been fully briefed by the parties. On November 21, 2005, the Court heard telephonic oral argument on the Motion. The Motion is therefore ripe for disposition.

**DISCUSSION:**

In the Motion, Defendant requests that the Court transfer this action to the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)"). Defendant asserts that it is a small, family-owned and managed company based in Oregon and that Plaintiff is a Swedish conglomerate

with approximately $7.5 billion in sales.  (Def.'s Br. Supp. Mot. Transfer at 2).  In addition, Defendant argues that neither of the parties are based in the Middle District of Pennsylvania and all of the significant witnesses are far outside of the district.  (Def.'s Mot. Transfer at ¶ 4).  "Sandvik easily could have brought suit in Oregon, but chose to shop for a district where there was only a tenuous basis for asserting venue, presumably as a tactic to making defending the suit as difficult as possible for a small company based on the opposite coast."  Id. ¶ 6.  Finally, Defendant asserts that analysis of the § 1404(a) factors demonstrates that the suit should be transferred to the District of Oregon.  Id. ¶ 8.

In response, Sandvik argues that from the date Rockmore first began its infringing activities until the date this suit was filed, at least 37% of all the infringing devices sold by Rockmore were sold by Rockmore's sale representative in Lebanon, Pennsylvania, G. Michael Lough ("Mr. Lough").  (Pl.'s Br. Opp. Def.'s Mot. Transfer at 1).  Sandvik maintains that Mr. Lough, who is no longer employed by Rockmore, and the customers he serviced will likely be important witnesses in this case, and they are located in the northeast United States, including Pennsylvania.  Id.  Sandvik asserts that Rockmore has made no mention of any need for non-party witnesses.  Moreover, Sandvik contends that "Rockmore found Pennsylvania a convenient place to do business and conduct infringing activities.

It should not now be heard to complain that it is inconvenient to face trial in that very same place." Id. at 1-2.

We initially note that in considering a motion to transfer a civil action to another federal district the Supreme Court has instructed that § 1404(a) is intended to vest the Court "with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30-31 (1988)). The burden is on the moving party, Defendant in the case sub judice, to establish that a balancing of proper interests weigh in favor of a transfer. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).

Section 1404(a) of Title 28 of the United States Code states, in pertinent part, as follows:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Under § 1404(a), two showings must be established for the case to be transferred to another district or division, in this case the District of Oregon. A threshold question to consider is whether the action "might have been brought" in the proposed transferee district, the District of Oregon. High River

P'ship v. Mylan Labs., Inc., 353 F.Supp.2d 487, 492 (M.D. Pa. 2005); see also Measurement Specialities, Inc. v. Stayhealthy.com, 275 F.Supp.2d 638, 640 (E.D. Pa. 2003). "If this limitation is met, the court must then weigh a list of factors." High River P'ship, 353 F.Supp.2d at 492. Stated another way, a showing must be made that the transfer will serve the convenience of the parties and the witnesses, as well as the interests of justice. Savoy Owners Associates, Inc. v. Corp. of New York, 2003 U.S. Dist. LEXIS 3317, at *3 (S.D.N.Y. 2003).

With regard to the first showing, whether the action "might have been brought" in the proposed transferee district, the United States District Court for the District of Oregon, both parties appear to concede that the District of Oregon would have jurisdiction over this action. Moreover, venue in a patent infringement action is controlled by 28 U.S.C. § 1400(b), which provides: "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." See 28 U.S.C. § 1400(b). In actions that involve a corporate defendant, § 1391(c) defines residency for the purposes of venue: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); see also

Saint-Gobain Calmar, Inc. v. National Products Corp., 230 F.Supp.2d 655, 657 (E.D. Pa. 2002). Rockmore is subject to personal jurisdiction in Oregon as it is incorporated in, and has its principal place of business, in Oregon. In its submission, Rockmore admits that there is no impediment to Sandvik's bringing suit against Rockmore in Oregon. (Def.'s Br. Supp. Mot. Transfer at 10). Accordingly, we find that this action "might have been brought" in the proposed transferee district, the United States District Court for the District of Oregon.

As we previously explained, the second showing that must be made under § 1404(a), which will be the focus of the balance of this narrative, is that the transfer will serve the convenience of the parties and the witnesses, as well as the interests of justice. As both parties submit, although there is no definitive list, courts generally consider the following factors in determining whether to transfer a case pursuant to § 1404(a):

(1) the plaintiff's choice of forum;

(2) the defendant's preference;

(3) where the claim arose;

(4) the convenience of the parties;

(5) the convenience of the witnesses, but only to the extent that the witnesses

may actually be unavailable for trial in one of the fora;

(6) the location of books and records, similarly situated to the extent that the files could not be produced in the alternative forum;

(7) the enforceability of the judgment;

(8) practical considerations that could make the trial easy, expeditious, or inexpensive;

(9) the relative court congestion in the competing courts;

(10) the local interest in deciding local controversies at home;

(11) the public policies of the fora; and

(12) the familiarity of the trial judge with the applicable state law.

High River, 353 F.Supp.2d at 497 (citing Jumara, 55 F.3d at 879-80).  Moreover, and as noted, in determining whether or not to transfer venue, the Court must consider the three general categories of factors stated in § 1404(a): (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) whether the transfer would be in the interest of justice.  Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997), cert. denied, 522 U.S. 1029 (1997).

After a careful review of the record, the § 1404(a) factors as they pertain to this case, and applicable caselaw, we will transfer this case to the United States

District Court for the District of Oregon, for the reasons that follow.

First, with regard to the Plaintiff's choice of forum, both parties state that a plaintiff's choice of proper forum is a "paramount consideration" and that choice "should not be lightly disturbed." See Shutte, 431 F.2d at 25 (internal citations omitted). This Court has recently explained in High River that a plaintiff's choice of forum is entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit is based. High River, 353 F.Supp.2d at 498-99; see also Reed v. Weeks Marine, Inc., 166 F.2d 1052, 1057 (E.D. Pa. 2001).

It is undisputed by the parties that Sandvik's choice of forum, the Middle District of Pennsylvania, is not its "home." As we previously indicated, Sandvik is incorporated in Sweden and operates in the United States through divisions which include ones based in Georgia and Texas. Sandvik argues, however, that the Middle District of Pennsylvania is the "situs of the occurrence upon which the suit is based" with reliance upon one sale and at least three offers to sell the allegedly infringing MI6 drill bit from Mr. Lough's Lebanon, Pennsylvania based office, which Sandvik discloses is responsible for 37% of Rockmore's sales for that product. As raised during the telephonic oral argument with the parties held on November 21, 2005, and as explained within jurisprudence emanating from the

United States District Court for the Eastern District of Pennsylvania, to the extent that Sandvik's claim is based on alleged infringing products being sold in the Middle District of Pennsylvania, this district is one of many fora in which the claim can arise because Rockmore's products are sold at least nationally, and quite likely abroad.  See Saint-Gobain Calmar, 230 F.Supp.2d at 660 ("To the extent that [Plaintiff's] claim is based on the alleged infringing products being sold here, this District is one of the many fora in which the claim can arise because [Defendant's] products are sold nationally.").

In addition, in Saint-Gobain Calmar, a patent infringement case in which allegedly infringing sales occurred in Pennsylvania, the Eastern District explained that when the central facts of a lawsuit occur outside the forum state, plaintiff's choice of venue is accorded less deference.  Id.; see also Renzetti, Inc. v. D.H. Thompson, Inc., 1997 U.S. Dist. LEXIS 6121, at *8-9 (E.D. Pa. 1997).  The court in Saint-Gobain Calmar determined that "the preferred forum is that which is the center of gravity of the accused activity."  Saint-Gobain Calmar, 230 F.Supp.2d at 660.  Moreover, the court stated that the "center of gravity" for such a claim is in the district where the alleged infringement occurred.  Id.  Plaintiff here argues that one sale of the allegedly infringing product, offers for sale of the allegedly infringing product, and "elements of willful infringement related to copying the

patented device were all based" in the Middle District of Pennsylvania. However, the court in Saint-Gobain Calmar explained that in finding the "center of gravity," a district court "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." Id. The court then explained that appropriate considerations include the location of a product's development, testing, research, production, and the place where the marketing and sales decisions were made, rather than where limited sales activity has occurred. Id.

In the case sub judice, Defendant explains that sales orders of the allegedly infringing product were submitted to Oregon, the products shipped in fulfillment of the orders were made and shipped from Oregon to the states where those customers resided, the customers were invoiced from Oregon, and the customers made payment to Oregon. Although there was sale activity in Pennsylvania, including one sale and at least three offers to sell the allegedly infringing product, this activity is insufficient to establish Pennsylvania as the center of gravity of the allegedly infringing activity. See, e.g., Technical Concepts L.P. v. Zurn Industries, Inc., 2002 WL 31433408, at *3 (N.D. Ill. 2002)("sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states."); Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 482-3

(D.N.J. 1993). Accordingly, we find that the center of gravity or hub of activity of the alleged infringement occurred in Oregon, where Defendant is incorporated and maintains its principal place of business. Plaintiff's choice of forum is not entitled to the higher deference afforded to a home forum. Saint-Gobain Calmar, 230 F.Supp.2d at 660; see also Ricoh Co., Ltd., 817 F. Supp. at 481-2 ("When the central facts of a lawsuit occur outside of the forum state, a plaintiff's selection of that forum is entitled to less deference.").

Consequently and in light of the above analysis, it is our view that the District Court of Oregon is a more convenient venue because it is closer to the hub of activity surrounding the location where Defendant conducts its operations and makes major decisions regarding the allegedly infringing product at issue.

We must now move to a consideration of the first general category of factors stated in § 1404(a), which is the convenience of the parties. In its submissions and at the telephonic oral argument held on November 21, 2005 before the Court, Defendant asserts that it cannot easily litigate this case in Pennsylvania based upon the expense of court proceedings for a modest company. Plaintiff did not address this factor in its submission and indicated that factors it considered to be "neutral" as between the parties were not discussed. In considering the litigants' ability to bear the expenses of litigating in a particular forum, this factor weighs in favor of

Defendant as it maintains approximately $17 million in sales, whereas Plaintiff's approximate total sales are $7.5 billion. Moreover, as Sandvik has no place of operations or presence in Pennsylvania, it will presumably need to incur litigation expenses in this case irrespective of whether the proceedings will be held in Pennsylvania or Oregon. Finally, this factor also weighs in favor of Defendant based upon Defendant's limited connection to this forum. Indeed, Defendant's rather attenuated connection to this forum consists solely of one former employee, who now resides in Massachusetts, who made one sale and three offers to sell the allegedly infringing product in Pennsylvania, and consulted a Pennsylvania company who tested Rockmore's product at issue.

We will now consider the second general category of factors stated in § 1404(a), the convenience of the witnesses. As both parties submit, in Hillard v. Guidant Corp., 76 F.Supp.2d 566 (M.D. Pa. 1999), "[t]he law on the transfer of cases distinguishes between party and non-party witnesses. The party witnesses are presumed to be willing to testify in either forum despite any inconvenience. The convenience of non-party witnesses is the main focus." Id. at 570. Moreover, several courts have determined that the convenience of the witnesses is a primary, if not the most important factor in considering a motion under § 1404(a). Biometics, LLC v. New Womyn, Inc., 112 F.Supp.2d 869, 876 (E.D. Mo. 2000);

Savoy Owners Assocs., Inc., 2003 U.S. Dist. LEXIS 3317, at *3-4 ("Convenience of the witnesses is the most powerful factor governing the decision to transfer a case.") (internal citations omitted).

In Savoy Owners Assoc. v. Ins. Corp. of New York, 2003 U.S. Dist. LEXIS 3317 (S.D.N.Y. 2003), to which Plaintiff refers, the court explains that to meet the burden of proof, Defendant must provide the Court with a list of probable witnesses who will be inconvenienced by the current forum and a general statement of what the witnesses' testimony will cover.  A careful review of the record reveals that the non-party witnesses identified to date by Rockmore all reside outside of Pennsylvania, as we will discuss below.  In addition, Rockmore maintains that key third party witnesses are based in a variety of locations, including Sweden, Florida, Texas and California, but not Pennsylvania. (Def.'s Reply Br. at 4-5).

Initially, we note that Rainer Beccu's ("Mr. Beccu") declaration indicates that he was employed by Sandvik as an engineer from 1989 to 1996 and that he worked for Sandvik in Sweden.  According to his declaration, Mr. Beccu worked on the ideas that became the basis for the application for the 841 and 243 Patents at issue in this case.  He worked on a prototype of the 841 Patent in conjunction with the engineering department of "Mission," the Sandvik subsidiary in Houston,

13

Texas and principally worked with Faisal Yousef ("Mr. Yousef") who now is employed by a different company in Texas. With regard to the 243 Patent, Mr. Beccu worked with Mr. Yousef of Texas and Olaf Lundblad ("Mr. Lundblad"), now retired in Florida, and other Mission engineering employees who work for companies in Texas or still work with Mission's successor in Texas. The individuals with whom Mr. Beccu worked on the patent application for the 243 Patent were all based in Sweden and an important customer with whom Mr. Beccu worked in developing a prototype was based out of California. (Beccu's Decl. at 1-3). Rockmore asserts that the testimony of the above individuals is key to "(1) corroborating any claims conception date for the patents; (2) corroborating the circumstances and the date by which the patents were supposedly reduced to practice; and (3) the date and circumstances of public use, disclosure and commercialization of patented ideas." (Def.'s Reply Br. at 4).

In addition, Michael N. Zachary's ("Mr. Zachary") declaration raises an issue concerning the validity of Sandvik's patents. First, through investigation, Mr. Zachary located a company named Ingersoll-Rand, based in Roanoke, Virginia that sold a drill bit prior to Sandvik, and allegedly renders Sandvik's patents invalid. (Zachary Decl. at 2). Rockmore anticipates that Ingersoll-Rand's documents and testimony will be important to this case. Second, Mr. Zachary

states that he also learned of prior parts that likely anticipate the patent claims at issue, in particular, a part designed by a Germany company.  Id.

Again, the aforementioned information concerning Rockmore's probable witnesses who will be inconvenienced by the current forum reveals that the non-party witnesses identified to date by Rockmore all reside outside of Pennsylvania. Moreover, discovery taken by Sandvik of Rockmore confirmed that all of Rockmore's current employees, except one are based in Portland, Oregon.  The one exception is a sales employee based in New Hampshire, who covers portions of the Northeast, but not Pennsylvania as the Pennsylvania market is now covered by Oregon.  Accordingly, Rockmore's key witnesses who can testify concerning issues of product design, manufacturing, sales, marketing, financing, and accounting are all based in Oregon and would be greatly inconvenienced by the present forum.

After having considered Rockmore's proposed non-party witnesses in detail, we will now discuss Sandvik's proposed non-party witnesses.  Plaintiff argues that its non-party witnesses are essential to its case and that they will likely be unavailable to testify if this case is transferred to Oregon.  (Pl.'s Br. Opp. Def.'s Mot. Transfer at 9-11).  Plaintiff asserts that its specific non-party witnesses who will likely be unavailable to testify if we transfer this case to Oregon include the

following:

>(1) Mr. Lough, a non-party witness and former employee of Rockmore who now resides in Massachusetts. Mr. Lough has testified in his deposition that he made offers to sell the allegedly infringing MI6 bits to at least three Pennsylvania companies and that he offered the bit for sale to "numerous other companies . . . in the Northeast." (Rec. Doc. 33, Ex. 1 at 107-8). Mr. Lough testified that McDonald Service & Supply, located in Shelocta, Pennsylvania, tested the MI6 bit.

>(2) The three Pennsylvania companies, OCI in Brookville, Star Iron in Punxsutawney, and Gill Rock in Lebanon to which Mr. Lough offered to sell the MI6 bit. Plaintiff admits that OCI is not within subpoena power of the Court in the Middle District of Pennsylvania.

>(3) McDonald Service & Supply, located in Shelocta, Pennsylvania, tested the MI6 bit. Mr. Lough testified in his deposition that Rockmore's original version of the MI6 bit suffered from premature wear in the northeast United States and that after receiving a Sandvik-made patented bit, Rockmore modified its MI6 bit. Mr. Lough testified that McDonald Service & Supply then tested the bit and indicated that "Tim McDonald is actually – he's like a on-man show..." Id. at 71-72, 101-2.

Pl.'s Br. Opp. Def.'s Mot. Transfer at 9-11. Finally, Plaintiff maintains that Rockmore makes no assertion of any need for non-party witnesses.

First, Mr. Lough was employed by Rockmore for less than a one year period. As we previously indicated, he now resides in Massachusetts and is therefore outside the subpoena power of the Court if the case remains in Pennsylvania or if it is transferred to Oregon. In addition, as Defendant points out, Sandvik has already taken a video deposition of Mr. Lough which it may presumably show, to the extent it is otherwise admissible, at a trial held in either Pennsylvania or Oregon.

Second, at the telephonic oral argument before the Court, Plaintiff indicated its Pennsylvania non-party witnesses, specifically, the purchaser and three prospective purchasers of the allegedly infringing product, who are located in Pennsylvania, could likely provide information including but not limited to how both parties' relevant products work when stressed, as well as the efficiency of the patented design.[1]  The Court is in agreement with Defendant that such information, including the comparatively hard rocks found in the northeast United States, such as Pennsylvania, will likely be the subject of expert testimony if it proves to be an important issue in this litigation.  Assuming that to be the case, retained experts are free to interview individuals employed with the Pennsylvania companies referenced by Plaintiff and it is logical to envision that they will incorporate information concerning both parties' products when stressed, the efficiency of the patented design, and the difference in rock hardness, to the extent relevant in this case, in their reports.  Despite our multiple questions on this area during oral argument, Plaintiff's counsel was unable to elucidate why the in-person testimony of these Pennsylvania witnesses is critical to Plaintiff's case.  Simply stated, we believe that it is not.

---

[1] With regard to the offers of the MI6 bit for sale, it appears to be undisputed by the parties that such offers occurred and that further documentary information regarding the offers may be obtained in the course of discovery.

17

Additionally, we note at this juncture that Plaintiff has the option of pursuing video testimony if ultimately necessary and to the extent that documentation of the offers for sale is not otherwise available, Plaintiff can serve subpoenas for documents regardless of whether this case proceeds in Pennsylvania or is transferred to Oregon.  Finally, as Defendant submits, in <u>Biometics, LLC. v. New Womyn, Inc.</u>, 112 F.Supp.2d 869 (E.D. Mo. 2000), a similar issue occurred regarding three identified non-party witnesses who purchased the accused product and who would not voluntarily appear at trial.  In <u>Biometics</u>, the court explained that any evidence needed from these witnesses could be readily obtained by other means, such as deposition testimony or affidavits.  <u>Id.</u> at 876.  "In coming to this conclusion, the Court finds that the three prospective Missouri witnesses are not key witnesses, as they would testify only about using the accused product.  This case centers upon whether the accused product infringes on the patent-in-suit, and the Missouri witnesses' testimony would not related to this key inquiry.  Therefore it is not essential that their testimony be presented live."  <u>Id.</u>  The court in the Eastern District of Missouri also notes that it is probable that when unfettered discovery commences, plaintiff will discover other purchasers of the accused product, which is commensurate with what Plaintiff has informed the Court in submissions.  <u>Id.</u>

After carefully reviewing all submissions and applicable caselaw, we find neither Sandvik nor Rockmore have a corporate presence in Pennsylvania, and that Sandvik's relatively limited proposed Pennsylvania non-party witnesses would not be inconvenienced if we transfer this case to the District of Oregon.  Therefore, we hold that the convenience of the witnesses § 1404(a) factor weighs in favor of Defendant and supports transferring this case to Oregon.

The final general category of factors stated in § 1404(a) is whether the transfer would be in the interest of justice.  Defendant's contacts with Pennsylvania are minimal in this case and as previously noted, they consist of only one sale and three attempted sales of the allegedly infringing product, as well as a Pennsylvania company that tested Rockmore's MI6 drill bit.  In contrast, Defendant's research, development, manufacture, marketing, sale, and distribution of the accused product all take place in Oregon.  In the interest of justice, we find that it is more convenient and practical for the case to be tried in the forum where Defendant has a regular place of business, to facilitate the production of documents, records and other data necessary to discovery and trial of a patent infringement case.

Based on the foregoing, the Court concludes that Defendant has met its burden under § 1404(a) to establish that transfer is warranted.  Defendant's Motion to Transfer Venue is therefore granted.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendant's Motion to Transfer Venue (doc. 13) is **GRANTED**.

2. The Clerk shall transfer this matter to the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1404(a).

3. The Clerk shall close the file in this case.

s/ John E. Jones III  
John E. Jones III  
United States District Judge
